**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

ELLEN WEIDAUER,

                  Plaintiff,

-vs-

BROADSPIRE SERVICES, INC., et al.,

                  Defendants.

Case No. C-3-07-097

Judge Thomas M. Rose

---

**ENTRY AND ORDER OVERRULING DEFENDANTS' MOTION FOR RECONSIDERATION (Doc. #30); GRANTING IN PART AND OVERRULING IN PART PLAINTIFF'S MOTION TO REDUCE THE JUDGMENT TO A SUM CERTAIN (Doc. #33) AND GRANTING PLAINTIFF'S MOTION FOR ATTORNEY'S FEES (Doc. #31)**

---

This matter comes before the Court on three pending motions. The first is Defendants' Motion for Reconsideration. (Doc. #30.) The second is Plaintiff's Motion To Reduce the Judgment To a Sum Certain and To Remand To the Administrator for Further Proceedings. (Doc. # 33.) The third pending motion is Plaintiff's Motion for Attorney's Fees. (Doc. #31.) All three motions are fully briefed and ripe for decision.

### BACKGROUND

The Complaint in this matter is an Employee Retirement Income Security Act ("ERISA") claim that arises from the disability of Plaintiff Ellen Weidauer ("Weidauer"). Before becoming disabled, Weidauer was employed by Honda of America Mfg., Inc. ("Honda") as an Engineering Coordinator. While employed at Honda, Weidauer was provided long term disability ("LTD") coverage under Disability Insurance Policy No. SQH001001 (the "Policy").

The Policy was issued to Honda by Lumbermens Mutual Casualty Company ("Lumbermens"). It was a part of Honda's Health and Welfare Benefits Plan (the "Plan").

Weidauer brought a claim for benefits under the Policy pursuant to ERISA. She alleged that she was entitled to LTD benefits and that Honda and Lumbermens wrongfully denied her those LTD benefits.

Pursuant to requests for judgment on the administrative record submitted by Weidauer and by Honda and Lumbermens, this Court conducted a de novo review and determined that Weidauer is entitled to Long Term Disability ("LTD") under the "own occupation" definition of disability in the Policy. (Doc. #28.) Weidauer was given thirty (30) days to submit a motion requesting any attorneys' fees and other benefits to which she may believe that she is entitled under ERISA. (Id.)

## DEFENDANTS' MOTION FOR RECONSIDERATION

The Federal Rules of Civil Procedure do not provide for a "Motion for Reconsideration." However, courts have construed a motion for reconsideration filed within ten (10) days of entry of judgment as a motion to alter or amend judgment under Fed. R. Civ. P. 59(e). *See e. g. Shingleton v. Timmerman-Cooper*, No. 3:03cv450, 2008 WL 4445303 (S.D. Ohio Sept. 29, 2008). Finally, "[a] motion to alter or amend judgment pursuant to Federal Rule of Civil Procedure 59(e) may be granted (1) to correct a clear error of law; (2) to account for newly discovered evidence or an intervening change in the controlling law; or (3) to otherwise prevent manifest injustice." *CGH Transport, Inc,. v. Quebecor World, Inc.*, 261 Fed. Appx. 817, 823 (6th Cir. 2008)(citing *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999)).

In this case, the Defendants filed their motion for consideration within ten (10) days of this Court's Entry and Order on their Motion for Judgment On the Administrative Record. Also, Defendants' point to Rule 59(e) as the basis for their Motion for Reconsideration. Therefore, Defendants' Motion for Reconsideration will be considered in accordance with Rule 59(e) standards.

There are three situations in which a motion for reconsideration pursuant to Rule 59(e) may be granted. Defendants in this case seek reconsideration under two of the three situations - to correct clear error and to prevent manifest injustice.

The Court applied a de novo standard of review to Weidauer's claim for benefits. The Defendants now argue that this Court should have applied the deferential "arbitrary and capricious" standard of review.

Weidauer did not plead that the claims administrator did not have discretionary authority and stipulated in her brief in support of her Motion for Judgment On the Administrative Record that arbitrary and capricious review applied. However, in her Response, Weidauer argued that, since the Administrative Record ("AR") includes no evidence that either Broadspire or Aetna was given a clear grant of discretion, the de novo, and not the arbitrary and capricious, standard should apply. Based on this, the Defendants now argue that Weidauer waived any argument that a de novo standard applied.

**Standard of Review**

The Summary Plan Booklet ("SPD") describes Honda's Long-Term Disability plan. (AR 667-70.) This description specifically directs the employee to Kemper to apply for LTD

benefits and warns that Kemper reserves the right to require a physical exam or an interview to determine proof of claim. (AR 670.)

The SPD has a section entitled "Administrative Information" which presents information that applies to all of Honda's welfare benefit plans including the health care, disability and insurance plans. (AR 671.) Therein, Honda is identified as the "plan sponsor and administrator". (Id.) The SPD indicates that "the plan administrator is the named fiduciary for purposes of ERISA and has the discretionary authority to interpret the terms of the plan and to perform all other aspects of plan administration, including but not limited to, determining eligibility for benefits." (AR 671.) On the very next page, the SPD lists each of the plans and the associated "claim administrator or trustee." (AR 672.) Kemper National Services is listed as the "claim administrator or trustee" for Honda's LTD plan. (Id.) This page of the SPD further indicates that Kemper National Services is the Plan Administrator and Insurer for the LTD plan and all other plans are self-insured by Honda. (Id.) From this, the Court concluded that Kemper National Services is the plan administrator for Honda's LTD insurance and Kemper, as the plan administrator, has a clear grant of discretionary authority to interpret the terms of the LTD plan.

The Defendants now argue that a statement found later in "Administration Information" section of the SPD grants discretionary authority to Broadspire and Aetna. The statement to which the Defendants refer is found under the heading "Claims Appeals" and reads:

> In all circumstances relating to any claim or appeal for benefits under any plan, the plan administrator or claim administrator responsible for making a determination on the claim or appeal shall have discretionary authority in making such determination…

(AR 683.) This statement grants discretionary authority over **any** claim but not to **any** plan or claim administrator. While this statement, taken with the remainder of the SPD grants

discretionary authority to Kemper National Services, it does not grant discretionary authority to Broadspire or to Aetna.

The Defendants argue that "there is nothing in ERISA that even requires a re-delegation to be in writing." In support of this argument, the Defendants cite *Lee v. MBNA Long Term Disability & Benefit Plan*, 136 Fed. Appx. 734 (6th Cir. 2005).

In *Lee*, the Sixth Circuit found that there was no improper delegation of plan administration authority. *Id.* But the summary plan description in *Lee* stated that MBNA could delegate its discretionary authority and the delegate(s) could re-delegate the discretionary authority. *Id.* at 736. In doing so, the Sixth Circuit reminded that an ERISA fiduciary may delegate its fiduciary responsibilities to either another named fiduciary or a third party **if the plan establishes procedures for such delegation**. *Id.* at 742(emphasis added). The plan provisions at issue in *Lee* clearly showed that the plan administrator and fiduciary had the authority to delegate its fiduciary responsibilities and that its delegates could in turn re-delegate their authority provided the plan administrator allowed the re-delegation. *Id.*

In this case, the SPD indicates that Honda delegated its fiduciary responsibilities as plan administrator of the LTD plan to Kemper National Services. However, Defendants have not identified, nor is the Court aware of, plan provisions that show that Kemper National Services, as the plan administrator, had the authority to delegate its fiduciary responsibilities and that its delegates could in turn re-delegate their authority. Therefore, the Court's holdings in *Lee* support and reinforce the earlier decision made by this Court and do not support Defendants' argument.

Thus the Defendants' argument that there is nothing in ERISA that requires a re-delegation to be in writing and, therefore, discretionary authority was granted to Broadspire and Aetna is not well founded. While specific written delegation may not be required, provisions for delegation must be included in the LTD plan and they were not.

**Waiver**

The Defendants' other argument is that Weidauer waived any argument that de novo review be applied. Weidauer waived this requirement, according to the Defendants, because she did not plead that the claims administrator did not have discretionary authority and she stipulated in her Brief in support of her Motion for Judgment On the Administrative Record that arbitrary and capricious review applied. This argument too is not well-founded.

Because a denial of ERISA benefits is ordinarily reviewed de novo, the party claiming entitlement to review under an arbitrary and capricious standard has the burden of proving that the arbitrary and capricious standard applies. *Crider v. Highmark Life Ins. Co.*, 458 F. Supp.2d 487, 501 (W.D. Mich. 2006)(citing *Brooking v. Hartford Life and Acc. Ins. Co.*, 167 Fed. Appx. 544, 547 (6th Cir. 2006)). Thus, the Defendants in this case had the burden of proving that an arbitrary and capricious standard applied. Whether or not or even when the standard-of-review issue was raised does not change the burden. And the Defendants have not satisfied this burden.

The Defendants also argue that they did not have an opportunity to discuss the standard of review to be applied because it was not raised by Weidauer until her response to her Motion for Judgment On the Administrative Record and the applicable procedures do not permit a reply.

This too is not well-founded and somewhat disingenuous. The Defendants had the burden of showing that an arbitrary and capricious standard applied and failed to satisfy that burden in their Motion for Judgment On the Administrative Record, in their Response to their Motion for Judgment On the Administrative Record, in their Motion for Reconsideration or in their Reply to their Motion for Reconsideration.[1]

## Conclusion

Defendants' Motion for Reconsideration is OVERRULED. They have not shown a clear error of law or manifest injustice. Weidauer is entitled to LTD benefits under the "own occupation" definition of disability in the Policy.

## PLAINTIFF'S MOTION TO REDUCE THE JUDGMENT TO A SUM CERTAIN, FOR PREJUDGMENT INTEREST, AND TO REMAND TO THE ADMINISTRATOR FOR FURTHER PROCEEDINGS

In this Motion, Weidauer seeks an order reducing the judgment to a sum certain and for an award of pre-judgment interest. (Doc. #33.) She also seeks an order remanding this matter to the plan administrator for an assessment of whether she is disabled from "any occupation." (Id.)

The Defendants respond that this Motion should be stayed pending a ruling on its Motion for Reconsideration. The Defendants also respond that Weidauer's motion overstates the amount of benefits that she is entitled to, that prejudgment interest should not be awarded and that the Court cannot remand a claim that the claims administrator has not yet considered.

## Stay

---

[1] The Defendants refer to a "slightly unusual procedural history." However, the procedure used to adjudicate ERISA claims in this case is the procedure set forth by the Sixth Circuit and used regularly in ERISA cases. *See Wilkens v Baptist Healthcare System, Inc.*, 105 F.3d 609 (6th Cir. 1998).

The Defendants argue that this Motion should be stayed pending resolution of their Motion for Reconsideration. With this, Weidauer agrees.

The Court has addressed Defendants' Motion for Reconsideration above. Therefore, Defendants' argument that this Motion should be stayed is moot.

**Amount of Benefits**

Weidauer argues that she is entitled to a payment of $1882.17 per month for 24 months. This totals $45,172.08 for a 24-month period.

Weidauer worked 24 hours per week at a rate of $30.163 per hour. (AR 016.) Her annual wage was computed to be $37,643.42. (Id.) The Policy provides a benefit of 60% of pay. (AR 025.) At the 60% rate, Weidauer's disability benefit from the Policy was computed by the administrator to be $1882.17 per month. (AR 016-17.)

Weidauer was first eligible for LTD benefits on March 18, 2005. (AR 350.) The "own occupation" benefit period under the Policy is 24 months. (AR 027.) Thus, Weidauer is entitled to $1882.17 per month for 24 months.

The Defendants do not challenge Weidauer's calculations but argue that this amount must be reduced by social security benefits and any other applicable offsets. Only benefits due under the Policy provisions can be provided. *See Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134, 146 (1985).

The Defendants identify two offsets. One offset identified is if Weidauer has returned to limited work and the other is if Weidauer is receiving or receives other benefits.

The first "offset" identified by the Defendants is not an offset. The Policy provides for a different method of calculating the monthly benefit if the claimant is earning more than 20% of

their Indexed Pre Disability Earnings in any occupation. (AR 32.) In this case, Weidauer indicated on her application that she was not working and the plan administrator calculated Weidauer's monthly benefit as if she was not working. (AR 016-17, 55) Further, Kemper told Weidauer that, if approved, her monthly benefit would be 60% of her base monthly wages. (AR 66.) Finally, it is obvious from the AR that Weidauer did not work during the two years that she was disabled from her "own occupation." Therefore, the Defendants' argument regarding offset if Weidauer returned to limited work during the period that she was disabled from her "own occupation" is not well grounded in either the Policy or the facts of this case.

The second offset identified by the Defendants is an offset for other benefits. The Policy provides that Weidauer's monthly benefit will be reduced by "Other Income Benefits" which are specifically defined in the Policy. (AR 31-33.)

The Defendants particularly identify social security disability benefits as one of the "Other Income Benefits" because they are aware that Weidauer has applied for social security disability benefits and the benefit decision is pending.[2] However, the Policy specifically provides that the monthly benefit will not be reduced by an estimated amount for social security if Weidauer applies for social security and signs the Long Term Disability Reimbursement Agreement. (AR 33.)

Weidauer signed a Kemper Reimbursement Agreement on December 4, 2001 (AR 48) and a Broadspire Reimbursement Agreement on May 5, 2005 (AR 61). In both of these reimbursement agreements, Weidauer agrees to notify the plan administrator immediately upon

---

[2]The Defendants have a release signed by Weidauer giving them permission to obtain social security information.

receiving notice of an award or denial of any "Other Benefit"[3] and agrees to reimburse the plan for the full amount of any overpayments due to the receipt of "Other Benefits." (Id.) Weidauer agreed to these items "to commence the Plan benefits and in recognition of the fact that these benefits will not be reduced until 'Other Benefits' are actually rewarded."

The Defendants have presented no evidence or well founded argument as to why Weidauer's monthly benefit should now be reduced by an "offset." One of the "offsets" identified by the Defendants is not really an offset and is not otherwise applicable as indicated by the Defendants' documentation included in the AR. The other offset is not an issue because Weidauer has agreed to notify the plan immediately and to reimburse the Plan for any "Other Benefits" that she may receive and the Plan, in turn agreed not to reduce her monthly benefit until such "Other Benefits" were rewarded. Further, there is no indication that Weidauer has either been notified that she would receive any "Other Benefits" or has actually received any "Other Benefits."

Weidauer is entitled to a payment of $1882.17 per month for 24 months and no offsets currently apply. The next issue on the road to a "sum certain" is pre-judgment interest.

**Prejudgment Interest**

Weidauer argues that this Court should award prejudgment interest. The Defendants respond that an award of prejudgment interest is not appropriate.

"Though ERISA does not address the propriety of awarding prejudgment interest, prejudgment interest may be awarded in the discretion of the district court." *Tiemeyer v.*

---

[3]The definition of "Other Income Benefit" in the Policy and the definition of "Other Income" in the reimbursement agreements are essentially the same.

*Community Mutual Insurance Co.*, 8 F.3d 1094, 1102 (6th Cir. 1993)(citing *Bricklayers' Pension Trust Fund v. Taiariol*, 671 F.2d 988, 990 (6th Cir. 1982)). Further, "[a]wards of prejudgment interest are compensatory, not punitive, and a finding of wrongdoing is not a prerequisite to such an award." *Id.*(citing *Drennan v. General Motors Corp.*, 977 F.2d 246, 253 (6th Cir. 1992), *cert. denied*, 508 U.S. 940 (1993)).

Awards of prejudgment interest compensate a beneficiary for the lost interest value of the money that was wrongfully withheld. *Ford v. Uniroyal Pension Plan*, 154 F.3d 613, 618 (6th Cir. 1998). They are made to put the plan in the position it would have been but for the failure to properly make decisions consistent with plan provisions. *Id.*

In this case, Weidauer was due monthly payments beginning when she became disabled under the terms of the Policy and those monthly payments have been wrongfully withheld. Therefore, Weidauer is due prejudgment interest on those monthly payments to compensate her for the "interest value" of the monthly payments that were wrongfully withheld.

The only equitable principle identified by the Defendants in their argument against prejudgment interest is that Lumbermens is going out of business and an award of prejudgment interest will be paid from a "diminishing pot" that must pay all benefits due to any individual receiving disability benefits. However, without deciding whether Honda or Lumbermens is liable to Weidauer, the Court finds this "equitable principle" unavailing. Not awarding prejudgment interest because Lumbermens is paying other benefits makes no sense.

The next issue becomes the interest rate. As with the award of prejudgment interest, the rate of prejudgment interest lies within the court's discretion. *Tiemeyer*, 8 F.3d at 1102. In this regard, the Sixth Circuit has approved the use of the post-judgment interest rate prescribed in 28

U.S.C. § 1961 as a reasonable guide for a prejudgment interest rate. *Ford*, 154 F.3d at 619. The Defendants agree.

Title 28, section 1961 sets forth a rate "equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." The Court hereby adopts this interest rate for Weidauer's case.

Applying this post-judgment interest rate to a prejudgment situation means interpreting the "date of the judgment" in 28 U.S.C. § 1961 to be the date when a monthly payment was due to Weidauer. Interest would then be calculated to October 27, 2008, the date this Court determined that the monthly payments were due to Weidauer. The issue of post-judgment interest has not been briefed and is, for now, left to the Parties.

The Court has not been given the information by the Parties to make this calculation and will, therefore, leave the calculation of prejudgment interest due to Weidauer to the Parties to accomplish within the next thirty (30) days. Thirty (30) days is selected because Weidauer has waited long enough for her benefits.

**Remand**

Weidauer next argues that this matter should be remanded to the plan administrator for consideration of whether she is entitled to benefits under the "any occupation" terms of the Policy. The Defendants respond that the Court cannot remand a claim that the claims administrator has not yet considered.

Since Weidauer has not made a claim for benefits under the "any occupation" terms of the Policy, the claims administrator has not considered evidence of Weidauer's entitlement to

benefits under the "any occupation" terms of the Policy and has thus never been denied such benefits. When the judgment of this Court that Weidauer is entitled to benefits becomes final, she is effectively reinstated as a participant in the Plan. She can then apply for benefits under the "any occupation" terms of the Policy.

With this, Weidauer agrees. Therefore, this matter will not be remanded for a determination as to whether Weidauer is entitled to benefits under the "any occupation" terms of the Policy.

**Conclusion**

Defendants' request for a stay of this Motion is moot. The Court has addressed Defendants' Motion for Reconsideration above.

Weidauer is entitled to $45,172.08 plus prejudgment interest. This amount is based upon her entitlement to a payment of $1882.17 per month for 24 months. The prejudgment interest amount is to be calculated by the Parties within thirty (30) days using the rate set forth in 28 U.S.C. § 1961 and using the terms of the Policy as to when payments were due to Weidauer.

Because the amount of prejudgment interest has not been calculated, the judgment in this case cannot yet be reduced to a sum certain. Any amount of post-judgment interest that Weidauer may be entitled to is not at issue here.

In sum, Weidauer's Motion To Reduce the Judgment To a Sum Certain, for Prejudgment Interest and To Remand To the Administrator For Further Proceedings (doc. #33) is GRANTED IN PART and OVERRULED IN PART. This Court will retain jurisdiction over this matter to assure that Weidauer receives the payments to which she is entitled.

**PLAINTIFF'S MOTION FOR ATTORNEY'S FEES**

Weidauer seeks an award of attorney's fees and non-taxable costs pursuant to 29 U.S.C. § 1132(g). The Defendants respond that an award of attorney's fees in this case is not appropriate. Although not challenging the hourly rate requested or the amount of time spent preparing for the core ERISA case, the Defendants also argue that, if attorney's fees are awarded, the amount awarded should be less than the requested amount. The first issue, then, is whether attorney's fees should be awarded.

**Award of Attorney's Fees**

ERISA expressly authorizes an award of reasonable attorney's fees at the discretion of the district court. *Ford*, 154 F.3d at 629 (citing 29 U.S.C. § 1132(g)(1)). However, ERISA does not set forth the methodology to be used when calculating an attorney fee award. *Id.* Finally, there is no presumption that attorney's fees will be awarded. *Moon v. Unum Provident Corp.*, No. 05-1974, 2006 U.S. App. LEXIS 16597 at *7 (6th Cir. June 29, 2006).

When exercising its discretion regarding attorney's fees, courts are to consider the following guidelines:

1. The degree of the opposing party's culpability or bad faith;

2. The opposing party's ability to satisfy an award of attorney's fees;

3. The deterrent effect of an award on other persons under similar circumstances;

4. Whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and

5. The relative merits of the parties' positions.

*Secretary of Department of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985). No single guideline is determinative and the individual guidelines are typically not dispositive. *Moon*, 2006 U.S. App. LEXIS 16597 at *6-7.

Degree of Defendants' Culpability Or Bad Faith

Weidauer submitted evidence that she was unable to perform the duties of the Engineering Coordinator position at Honda due to several illnesses. She submitted findings from at least three attending physicians that she had multiple sclerosis with complications due to weakness, difficulty walking, urinary retention, frequent urinary tract infections, chronic pancreatitis and cystonia. In addition, she submitted evidence that she fatigued easily, had cognitive and psychological deficits, had coordination deficits, had sensory loss and was taking a variety of prescription drugs for treatment of her illnesses. Finally, most, if not all, of Weidauer's illnesses were confirmed by opinions of doctors who saw her other than her Attending Physician.

The Plan Administrator's response was seven peer reviews, two before benefits were denied and five on appeal of that decision. The peer reviews were conducted by specialists in very specific areas selected by the Plan Administrator. These peer reviews were unavailing and, at times, disingenuous. Finally, at no time did the Plan Administrator elect to conduct an independent medical examination,[4] which it had a right to do, and at no time did the Plan Administrator analyze the combined impact of all of Weidauer's illnesses and the drugs she was taking on her ability to perform the duties of an Engineering Coordinator.

---

[4] Claims of a psychiatric (subjective) nature are particularly inappropriate for a paper review. *Smith v. Bayer*, 275 Fed. Appx. 495, 508 (6th Cir. 2008). Yet, while Weidauer made claims of a psychiatric (subjective) nature, the Plan Administrator conducted only a paper review.

The Defendants conduct in this case entails, if not demands, a finding of culpability. There is no evidence that the Plan Administrator failed to properly communicate with Weidauer. However, in the face of clear evidence of disability from several physicians who saw and treated Weidauer, the Plan Administrator elected not to conduct an independent medical examination. Instead, Weidauer's records were sent to five specialists in very specific areas whose reports were at best not on point and at times disingenuous. Further, the Plan Administrator did not consider the overall impact of Weidauer's many symptoms and the drugs she was taking on her ability to perform as an Engineering Coordinator.

The Plan Administrator's actions do not suggest that it was engaged in a good-faith analysis of the many physical and mental problems presented by Weidauer. Instead, it suggests that the Plan Administrator was merely looking for a way to decline benefits. This guideline supports an award of attorney's fees.

### Defendants' Ability To Satisfy an Award of Attorney's Fees

Weidauer argues that Lumbermens is a large insurance company with ample ability to pay any fees assessed. The Defendants respond that Lumbermens is in the process of going out of business and no longer collects premiums. Thus, according to the Defendants, due to Lumbermens' limited availability of funds, any funds directed to attorney's fees will result in less funds to pay disability beneficiaries and other insurance claims.

The reason given by the Defendants is, of course, not a good reason to deny attorney's fees to Weidauer if she is, in fact, entitled to them. The argument given by the Defendants only supports a finding that Lumbermens is capable of satisfying an award of attorney's fees,

assuming without deciding, that it is Lumbermens who is liable. This guideline weighs in favor of awarding attorney's fees.

## Deterrent Effect

Weidauer argues that attorney's fees should be awarded to deter plan administrators from "cavalierly denying" claims. The Defendants respond that, because Lumbermens is going out of business, an award of attorney's fees will have no deterrent effect on Lumbermens. Even assuming, without deciding, that Lumbermens will be responsible for an award of attorney's fees, there are other plan administrators still involved in viable businesses upon whom an award of attorney's fees in this case may have a deterrent effect. Therefore, this guideline too weighs in favor of awarding attorney's fees.

## Common Benefit

Weidauer only sought LTD benefits for herself and was not seeking benefits for any other Policy beneficiaries. In addition, Weidauer was not attempting to resolve a significant legal issue. Therefore, this guideline does not add weight to an award of attorney's fees.

## Relative Merits of Parties' Positions

This Court has determined that Weidauer's position in this matter was meritorious and that the Defendants' position was not. The Defendants argue that they did not misstate the law or facts in defending their decision to deny Weidauer's claim. Even assuming that the Defendants did not misstate the law or facts, they still did not make the correct decision. This guideline weighs in favor of an award of attorney's fees.

## Conclusion

An evaluation of four of the five guidelines favors an award of attorney's fees. The fifth guideline, whether a common benefit was sought, is not alone determinative. Therefore, Weidauer will be awarded attorney's fees. The next issue becomes the amount of attorney's fees to be awarded.

## Amount of Attorney's Fees

Weidauer seeks an award of attorney's fees to date totaling $15,090. The Defendants do not object to the proposed hourly rate or the amount of time spent preparing the ERISA case. Defendants' objection is that Weidauer should not be paid attorney's fees for any post-judgment motions including their Motion for Reconsideration and Weidauer's Motion for Attorney's Fees.

Federal courts generally follow the "lodestar" approach when assessing the reasonableness of the amount of attorney's fees requested in ERISA cases. *Plummer v. The Hartford Life Insurance Co.*, No. C-3-06-094, 2007 U.S. Dist. LEXIS 18189 at *8 (S.D. Ohio Mar. 15, 2007). The "lodestar" amount is a reasonable number of hours multiplied by a reasonable hourly rate. *Id.* The reasonable hourly rate is the prevailing market rate in the relevant community which lawyers of comparable skill and experience can reasonably expect to receive within the venue of this Court. *Id.* Finally, Weidauer has the burden of establishing that the fees she seeks are reasonable. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

Weidauer argues that a reasonable hourly rate for this case is $300 per hour. In support, she provides the Affidavit of her counsel which sets forth counsel's work experience in the ERISA field and a range of fees that have been approved in this Circuit ranging from $450 per hour to $250 per hour. (Affidavit of Tony C. Merry ("Merry Aff.") ¶¶ 1, 7 Nov. 24, 2008). The

Defendants do not dispute this rate. Therefore a rate of $300 per hour will be accepted for this case.

The remaining issue is the hours worked. Weidauer requests attorney's fees for 50.3 hours. The Defendants respond that Weidauer should not be paid attorney's fees for any post-judgment motions including their Motion for Reconsideration and Weidauer's Motion for Attorney's Fees. The Defendants do not identify a specific number of hours that should not be paid, but, instead, identify a formula for determining the maximum amount a prevailing party may recover as a fee award for preparation of the motion for fees. *See Coulter v. State of Tennessee*, 805 F.2d 146, 151 (6th Cir. 1986), *cert. denied*, 482 U.S. 914 (1987).

In *Coulter*, a civil rights case, the Sixth Circuit said that the nature of the lawyers activities require the court to trust the lawyer's word that the hours claimed for reviewing records, talking to other lawyers or experts, preparing legal documents and the like were actually expended and expended wisely. *Id.* at 150. The Sixth Circuit went on to find that, absent unusual circumstances, the hours allowed for preparing and litigating the attorney fee case should not exceed 3% of the hours in the main case. *Id.* at 151. Further, on motions that go to a particular issue in a case, the question should be whether the lawyer seeking compensation prevailed. *Id.*

In this case, Weidauer's attorney seeks to be paid for 12.4 hours for preparation of post-decision motions including a response to Defendants' Motion for Reconsideration, preparation of Weidauer's Motion To Reduce the Judgment To a Sum Certain and for preparation of Weidauer's Motion for Attorney's Fees. (Merry Aff. Ex. 1.) The 12.4 hours is about 33% of the hours identified for the main case, excluding post-judgment motions.

Weidauer was successful on all three post-judgment motions but the Court is unable to determine the hours spent on the attorney fee motion alone. Since the Court is unable to determine the hours spent on the attorney fee motion, the 3% limit set forth in *Coulter* cannot be applied.

What the Court does know is that Defendants' Motion for Reconsideration was not well founded. In fact, the law cited by the Defendants supports Weidauer's position. Further, Weidauer apparently had to file her Motion To Reduce the Judgment To a Sum Certain because she was unable to secure an acceptable amount, an amount which is owed and yet to be paid. Therefore, the Court has no good reason to reduce the amount of hours requested and has good reason to approve those hours.

## Conclusion

Weidauer is entitled to an award of attorney's fees. A reasonable hourly rate for this case is $300 per hour and 50.3 is a reasonable number of hours. Therefore, Weidauer is entitled to an award of $15,090 for attorney's fees.

**DONE** and **ORDERED** in Dayton, Ohio, this Twenty-First day of January, 2009.

s/Thomas M. Rose
_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record